706 P.2d 614 (1985)
APACHE TANK LINES, INC., a corporation, Plaintiff,
v.
Thomas R. CHENEY, Personal Representative of the Estate of Clifford P. Cheney, Defendant and Appellant.
Thomas R. CHENEY, as Personal Representative of the Estate of Clifford P. Cheney and Pamela A. Cheney and as Co-Conservator and Co-Guardian Ad Litem of the minor children Signa Cheney and Keenan Cheney, Leslie Skelton, as Co-Conservator and Co-Guardian Ad Litem for Signa Cheney and Keenan Cheney, Counterclaimant and Cross-Claimant and Appellants,
v.
COWBOY OIL COMPANY and LeGrand B. Brunson, Cross-Claim Defendants and Respondent.
No. 19573.
Supreme Court of Utah.
September 20, 1985.
Carl E. Malouf, Logan, for appellant.
Tim Dalton Dunn, Salt Lake City, for respondent.
PER CURIAM:
Defendant appeals from a summary judgment in favor of LeGrand Brunson and *615 his employer, Cowboy Oil Co., in a wrongful death action brought as a counterclaim on behalf of the estates and heirs of Clifford P. Cheney and Pamela A. Cheney, his wife. Brunson was the driver of a tank tractor and trailer that collided with the Cheneys' car, killing the Cheneys instantly. The trial court found Brunson not negligent as a matter of law. We reverse and remand for a trial on the merits.
On March 21, 1980, Brunson arose at 6:00 a.m., had a bowl of cereal and coffee for breakfast, and went on duty at 11:00 a.m. He drove a loaded tanker truck and trailer from Woods Cross, Utah, to Kemmerer, Wyoming, stopping for a hamburger and coffee between 1:00 and 2:00 p.m. He proceeded to Nightengale, about three miles southwest of Rock Springs, Wyoming, where the tanks were filled with 8,820 gallons of drip gas condensate, bringing the total weight of truck and trailer to 80,000-84,000 lbs. Brunson began his return trip at 9:00 p.m., stopped at Evanston for a couple of beers, stopped at the port of entry to help a friend with truck repairs, and then began the last leg of his journey to Woods Cross. It started to rain and turned cold, and by the time Brunson left the canyon and turned onto Route 89, he knew he was on black ice, because it was "slicker than hell" and people passing him in the opposite direction had "hollered" at him over their CB that the roads were slick and icy.
At around 1:30 a.m., as Brunson was ascending a long hill north of Layton, he accelerated to maintain a speed of his truck and went from sixth to seventh and then to eighth gear. The truck started to slip, and Brunson shifted down again to seventh to maintain a speed of about 40 m.p.h. It was at this point that he first noticed the headlights of Cheneys' oncoming car when it crested the hill ahead of him.
Here the evidence becomes confusing. In his deposition, Brunson testified that the headlights of the car suddenly disappeared. Without slowing down, Brunson got over as far off to the right as he could go, thinking he could get away from the car. He looked down at his speedometer, which read between 40 and 45 m.p.h., and when he next looked up, the headlights of the Cheney car were right in front of him. His truck crushed the car and its occupants inside.
In the statement given to the police, Brunson stated the Cheney car made a U-turn and entered his lane, and he tried to miss it. He amended that statement the following morning and added: "Car looked like it was making U-turn. Lights were aimed towards me when first saw him, thought I wonder what he's going to do, then I lost lights and almost as quick he was in front of me and I hit him."
Defendant was sued by Apache Tank Lines, owner of the Brunson truck, for property damage and loss of use of the tractor and trailer. Defendant counter-claimed for wrongful death and joined Brunson and Cowboy Oil Co. in this suit. Brunson and Cowboy Oil Co. moved for summary judgment, claiming that undisputed facts established that Brunson was not negligent as a matter of law. Defendant opposed the motion on the ground that the evidence before the court showed material disputed facts from which a jury might find Brunson negligent.
In an appeal from a summary judgment, we view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the losing party. Hall v. Warren, Utah, 632 P.2d 848 (1981); accord Blackhurst v. Transamerica Insurance Co., Utah, 699 P.2d 688 (1985). Summary judgment should be granted with great caution in negligence cases. Williams v. Melby, Utah, 699 P.2d 723 (1985). Issues of negligence ordinarily present questions of fact to be resolved by the fact finder. It is only when the facts are undisputed and but one reasonable conclusion can be drawn therefrom that such issues become questions of law. FMA Acceptance Co. v. Leatherby Insurance Co., Utah, 594 P.2d 1332 (1979). Likewise, proximate cause is usually a factual issue and in most circumstances will not be resolved as a matter of law. Unigard *616 Insurance Co. v. City of LaVerkin, Utah, 689 P.2d 1344 (1984). This case poses no exception.
Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Utah R.Civ.P. 56(c). In granting summary judgment, the trial court based its ruling on the parties' memoranda, affidavits, pleadings, arguments of counsel, and all other information contained in the court's file. The court found that there was no genuine issue of material fact and that Brunson and Cowboy Oil Co. were entitled to summary judgment as a matter of law. The trial court concluded that even "if Brunson had been a magician, he wouldn't have got out of the road of that car." Defendant contends in his appeal before us that it was for the jury to decide whether Brunson and his employer were negligent and that material fact issues precluded summary judgment.
Defendant introduced the affidavit of an expert witness whose credentials disclosed that he was a professor of engineering at Utah State University, had a masters degree from M.I.T. in structural engineering and had a Ph.D. from Iowa State University. He worked as a consultant in reconstruction of structural and mechanical failure and accidents. The affidavit stated that under one version of the facts as stated by Brunson, Brunson could have taken evasive action against the Cheney car traveling towards him out of control. Under Brunson's second version of facts, that the car was stopped or moving laterally, a speed in excess of 38 m.p.h. would not have permitted the truck to be stopped within the distance revealed by the low beam headlights under which Brunson claimed to have been driving. We think that affidavit was sufficient to controvert Brunson's versions of the accident and raised an issue of fact of whether Brunson was negligent under either version.
The trial court had before it two additional affidavits by one witness. The first one given by the witness to defendant on September 6, 1983, states that the car appeared to be stopped, pointing west, and beginning to make the turn. It appeared to be trying to go up the hill to the south when it must have slipped and gone into the outside lane where the collision took place. The affidavit further states that there was no other traffic in the north or southbound lanes except for the car of the witness. Nine days later, that same witness signed an affidavit for Brunson and Cowboy Oil Co., stating that she did not know which direction the Cheneys had been traveling immediately prior to the accident, that the truck driven by Brunson appeared to be traveling at a speed appropriate to the icy conditions, that there was nothing whatever Brunson could have done to avoid the accident, and that several approaching vehicles lost control and slid off the road when attempting to avoid the accident. Whereas the first affidavit describes the actions taken by the Cheney car sufficiently to create evidentiary facts, the second is couched in unsubstantiated conclusions. Those two affidavits, standing alone, create a material fact issue in favor of defendant. "A single sworn statement is sufficient to create an issue of fact. Clearly, it is not for a court to weigh the evidence or assess credibility." Webster v. Sill, Utah, 675 P.2d 1170 (1983).
Exhibits in the record show that tire marks left at the scene of the accident indicate no evasive action and belie Brunson's statement that there was no emergency lane into which he could have swerved and that he went as far to the right as he could.
There was evidence in the record that the maximum total shift time allowed by Cowboy Oil Co. was fourteen hours, which may have been surpassed by Brunson if it can be shown at trial that he went on duty at 11:00 a.m. on March 21st. There was evidence in the record that the consumption of alcohol on the job was against company policy, which again has a direct bearing on Brunson's alleged negligence.
*617 Section 41-6-46 of the Utah Traffic Rules and Regulations commands:
(1) No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or a railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.
Whether Brunson breached the conduct imposed by the statute was a question for the jury. From the evidence before the trial court, a jury could reasonably find that Brunson was driving too fast for existing hazardous conditions; that he was overdriving the area illuminated by his truck's two low beam headlights; and that he was fatigued, took no evasive action, and failed to keep a proper lookout. The trial court invaded the province of the jury when it granted Brunson and Cowboy Oil Co. summary judgment.
The case is remanded for a trial on the merits.