Phyllis DYBOWSKI, Plaintiff
and Appellant,

v.

**ERNEST W. HAHN, INC., d/b/a The Hahn Company, also d/b/a Trizec Properties, Inc., Defendant and Respondent.**

No. 880391–CA.

Court of Appeals of Utah.

June 9, 1989.

Ronald E. Dalby and Brian D. Kelm, Salt Lake City, for plaintiff and appellant.

Paul S. Felt, Salt Lake City, for defendant and respondent.

Before BENCH, GREENWOOD and JACKSON, JJ.

OPINION

BENCH, Judge:

Plaintiff in a negligence action appeals the entry of summary judgment against her. We affirm.

Defendant Ernest W. Hahn, Inc. (Hahn) is the owner of Fashion Place Mall (Mall) in Murray, Utah. On December 7, 1986, plaintiff Phyllis Dybowski, her husband, sister, and brother-in-law arrived at the Mall to do some Christmas shopping. Mrs. Dybowski and the others were just inside the entrance doors of the Mall when Mrs. Dybowski lost her footing, and fell forward onto the floor. In an apparent attempt to break her fall, she fractured both wrists.

Mrs. Dybowski brought this action against Hahn alleging negligence in the operation and maintenance of the property and in Hahn's failure to warn her of a "dangerous condition." After deposing Mrs. Dybowski and her husband, Hahn filed a motion for summary judgment. The trial court conducted a hearing on the motion and entered summary judgment for Hahn. In a minute entry, the court stated that "adequate time for discovery has elapsed, and plaintiff has not and in the opinion of the Court cannot establish the necessary element of specific acts of negligence of the defendant nor the necessary element of causation." Mrs. Dybowski appeals the judgment on the grounds that it was premature and improperly granted.

We first address Mrs. Dybowski's claim that summary judgment was premature because she had not been permitted to complete discovery. Utah R.Civ.P. 56(b) provides that "[a] party against whom a

claim ... is asserted ... may, *at any time*, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof." (Emphasis added.) A party opposing summary judgment, on the other hand, may file an affidavit explaining why it is not possible at the time to counter the movant's version of the facts. Utah R.Civ.P. 56(f); *see also Reeves v. Geigy Pharmaceutical, Inc.*, 764 P.2d 636, 639 (Utah App.1988). The trial court, in its discretion, should liberally review the affidavit unless it lacks merit or is dilatory, and determine whether the reasons stated in such an affidavit are adequate. *Id.*

> In making that determination, the trial court considers whether the party against whom summary judgment is sought seeks additional discovery time to uncover purely speculative facts after substantial discovery has already been conducted; whether the other party has appropriately responded to discovery requests; and whether sufficient time has already passed since the inception of the lawsuit for use of discovery procedures.

*Id.*

The record does not show that Mrs. Dybowski filed a Rule 56(f) affidavit. A memorandum opposing Hahn's motion was filed, however, and stated that Mrs. Dybowski wished to depose Hahn's employees about prior accidents and Hahn's use of "cleaning substances." If we were to regard this memorandum as an affidavit, and to assume that it was not meritless or dilatory, we must then determine whether the trial court abused its discretion in deciding that the reasons given were inadequate to deny summary judgment.

■ After reviewing the record, we conclude that there was no abuse of discretion. All of the discovery that occurred between the filing of the complaint and the hearing on Hahn's summary judgment motion was conducted by Hahn. In those six months, Hahn deposed the Dybowskis and sent interrogatories. Mrs. Dybowski, in contrast, did nothing to prosecute her case. The trial court could reasonably decide that sufficient time had passed to conduct at least preliminary discovery.[1] Therefore, we hold that the granting of Hahn's motion for summary judgment was not premature.

■ We turn next to Mrs. Dybowski's claim that summary judgment was improper. She argues that the Mall's floor was defective and that Hahn was aware of this "dangerous condition." In support of these allegations, she cites the depositions she and her husband gave to Hahn.

Our standard for review of a summary judgment is the same standard as that used by the trial court: We review the facts and inferences from those facts in the light most favorable to the losing party. *English v. Kienke*, 774 P.2d 1154, (Utah App. 1989). If we conclude that a genuine issue of material fact remains, we will reverse the summary judgment and remand the case for further proceedings on that issue. *Id.* Where no material fact remains at issue, we review the trial court's conclusions of law for correctness. *Id.* Although it is true that summary judgment is reserved for only the most clear-cut negligence cases, *id.*, "bare contentions, unsupported by any specification of facts in support thereof, raise no material questions of fact as will preclude entry of summary judgment." *Massey v. Utah Power & Light*, 609 P.2d 937, 938 (Utah 1980).

We have examined Mrs. Dybowski's assertions and can find nothing in the record to support the existence of a "dangerous condition" or negligence reflected in the condition of the Mall floor.[2] The following

---

1. Even if six months is not adequate time to conduct discovery in a relatively simple slip and fall case, we see no abuse of discretion in the trial court's reluctance to indulge Mrs. Dybowski's desire to locate and depose a woman who had approached her in the Mall after the accident. This woman had allegedly implied that previous accidents had occurred in the Mall. There is no indication in the record that this woman was employed by Hahn, that she had witnessed this accident or any other accident, or that she had personal knowledge of any flooring defect. The record is clear, however, that the identity of the woman was unknown and that Mrs. Dybowski had no way of tracking her down.

2. Mrs. Dybowski also implies that the absence of floormats at the entrance to the Mall constitutes a "breach of duty." Even if we were to

passages from Mrs. Dybowski's own deposition are indicative of this lack of support:

Q. Was there anything on your shoes at the time you walked into the store—to your knowledge, on the bottom of your shoes?

A. No.

Q. That would make them slippery?

A. No.

. . . .

Q. Do you know what caused you to fall?

A. No.

Q. Did you observe anything unusual about the floor in the area where you fell?

A. No, it was very shiny. That's about all I can tell you. A nice, shiny, clean floor.

Q. No moisture on it?

A. I don't think so.

Q. Did you ever yourself examine it after the accident?

A. No.

Q. Do you know whether it had any wax or polish on it?

A. No.

. . . .

Q. Did you step on any kind of foreign object which caused you to fall?

A. I don't think so.

Q. There wasn't a pebble or a grape or anything like that on the floor?

A. Not that I know of.

. . . .

Q. Now, as you walked into the mall, were you watching where you were going or were you looking somewhere else?

A. I was looking where I was going.

. . . .

Q. Have [your sister and brother-in-law] ever told you they saw anything that would cause you to fall?

A. No, no, no.

Q. You yourself just don't know what caused you to fall?

A. No.

Other passages in the deposition reveal that, immediately prior to the accident, Mrs. Dybowski had good eyesight, was free from any handicap, had taken no medication or alcohol, and was wearing conservative shoes. It is clear that Mrs. Dybowski does not know what caused her to fall that day and it is unlikely that any further investigation is apt to reveal the cause to her. We conclude that Mrs. Dybowski has failed to raise any material issues of fact beyond a "bare contention" that Hahn was somehow negligent. That being the case, the trial court properly granted summary judgment against her.

Affirmed.

GREENWOOD and JACKSON, JJ., concur.

accept the proposition that the absence of floormats may be an indication of negligence in certain situations, Mr. Dybowski's deposition shows that floormats were unnecessary on the day of the accident.