**2022 UT App 87**

## THE UTAH COURT OF APPEALS

TWILA DAVIS,
Appellant,
*v.*
WAL-MART STORES INC.,
Appellee.

Opinion
No. 20210346-CA
Filed July 8, 2022

Fifth District Court, Cedar City Department
The Honorable Matthew L. Bell
No. 170500175

Brian K. Harris and Heather E. Harris, Attorneys
for Appellant

Mitchel T. Rice, Andrea M. Keysar, and Marianne
Schumann, Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

TENNEY, Judge:

¶1     Twila Davis was shopping in a Wal-Mart one day when an employee collided with her. Davis was allegedly injured, and she later sued Wal-Mart for negligence. The district court granted Wal-Mart's request for summary judgment, however, and it did so based on its conclusion that Wal-Mart owed no duty to Davis. For the reasons set forth below, we reverse.

### BACKGROUND[1]

¶2      One day in August 2017, Twila Davis was shopping at Wal-Mart when she decided to look for a clock. When Davis got to the clock aisle, a Wal-Mart employee was stocking merchandise there. Davis saw something that she wanted to look at on the lower shelf "right next to" the employee, so she moved "from [the employee's] right side to [her] left side" and got within "a foot and a half" of the employee. As Davis bent over to get the item, the employee finished her task and "turned to [her] left" to walk away. The employee did not see Davis crouched beside her, however, and she collided with Davis as she turned.

¶3      Davis was allegedly injured in the collision, and she later sued Wal-Mart for negligence. In her complaint, Davis alleged that Wal-Mart had "negligently failed to design, construct, control, supervise, repair and maintain the premises and further failed to warn [Davis] of the hazard created by an employee of [Wal-Mart] when [she] fell on top of [Davis] knocking [Davis] to the floor."

¶4      Wal-Mart moved for summary judgment. In its motion, Wal-Mart first argued that Davis's claim failed as a matter of law because Wal-Mart "did not owe a duty of care to [Davis]." Alternatively, Wal-Mart argued that the open and obvious danger rule barred Davis's claim. Davis opposed the motion, but the district court granted it.

¶5      In its decision, the court rejected Wal-Mart's reliance on the open and obvious danger rule. The court determined that the rule

---

1. "When reviewing a grant of summary judgment, we view the facts in the light most favorable to the non-moving party." *Utah Golf Ass'n v. City of N. Salt Lake*, 2003 UT 38, ¶ 10, 79 P.3d 919.

was inapplicable because "the instant case is not one of a hazardous condition on the property."

¶6     But the court agreed with Wal-Mart on the duty question. In the court's view, Wal-Mart "owed no duty" to Davis based on the five-factor test set forth in *B.R. ex rel. Jeffs v. West*, 2012 UT 11, 275 P.3d 228. Of note, the court concluded that it "was not foreseeable that [Davis] would move within inches" of the employee, "stoop below the employee's field of vision, and do so without alerting the employee to her presence or waiting for the employee to finish returning merchandise to the top shelf." The court further opined that "serious injuries" were "unlikely" to result from such "low speed pedestrian collision[s]" and that "public policy" therefore "support[ed] refusal to impose upon property owners a greater duty to anticipate or avoid such low-probability events than the duty of invitees to do likewise." Because the court concluded that there was no duty, it granted Wal-Mart's request for summary judgment and dismissed Davis's complaint.

¶7     Davis timely appealed the court's decision.

ISSUE AND STANDARD OF REVIEW

¶8     Davis argues that the district court erred when it determined that Wal-Mart did not owe her a duty of care and, by extension, when it granted Wal-Mart's motion for summary judgment. "Whether a duty exists is a question of law" that we review for correctness. *Mower v. Baird*, 2018 UT 29, ¶ 14, 422 P.3d 837 (quotation simplified). "We review a [district] court's legal conclusions and ultimate grant or denial of summary judgment for correctness, viewing the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Heartwood Home Health & Hospice LLC v. Huber*, 2020 UT App 13, ¶ 11, 459 P.3d 1060 (quotation simplified).

ANALYSIS

I. Duty of Care

¶9     The district court granted Wal-Mart's request for summary judgment based on its determination that Wal-Mart owed no duty of care to Davis. We disagree with this determination.

¶10     "As every first-year law student learns, duty is one of four essential elements of a cause of action in tort." *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 5, 275 P.3d 228. "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *AMS Salt Indus., Inc. v. Magnesium Corp. of Am.*, 942 P.2d 315, 320–21 (Utah 1997) (quotation simplified). The existence of a "[d]uty must be determined as a matter of law and on a categorical basis for a given class of tort claims." *Jeffs*, 2012 UT 11, ¶ 23.

¶11     Here, it's undisputed that Wal-Mart is a business and that Davis was visiting Wal-Mart as its customer. As a result, Davis "enjoyed the status of 'business invitee' while upon [Wal-Mart's] property." *Hale v. Beckstead*, 2005 UT 24, ¶ 33, 116 P.3d 263. This was so because "the status of invitee includes business visitors who are invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Id.* (quotation simplified); *see also* Restatement (Second) of Torts § 332(3) (Am. L. Inst. 1965).

¶12     Because Davis was Wal-Mart's invitee, it's settled that Wal-Mart owed Davis a duty of care.[2] As explained by our supreme

_____

2. We acknowledge that the employee may have also had an independent duty of reasonable care unconnected with Davis's status as a business invitee and for which Wal-Mart may have

(continued…)

court, "[o]wners of land must . . . exercise due care and prudence for the safety of business invitees." *Dwiggins v. Morgan Jewelers*, 811 P.2d 182, 183 (Utah 1991). We have recognized this same duty too. *See, e.g.*, *Zazzetti v. Prestige Senior Living Center LLC*, 2022 UT App 42, ¶ 32, 509 P.3d 776 ("All possessors of land . . . owe duties of reasonable care to invitees who come onto their land."), *petition for cert. filed*, June 1, 2022 (No. 20220513); *Proctor v. Costco Wholesale Corp.*, 2013 UT App 226, ¶ 20, 311 P.3d 564 (recognizing that businesses have a duty "to exercise due care and prudence for the safety of business invitees" (quotation simplified)).

¶13 Despite such authority, the district court held that Wal-Mart did not owe Davis any duty in this case. And it did so based on its application of the supreme court's decision in *Jeffs*. In *Jeffs*, the court "identified several factors" that are "relevant to determining whether a defendant owes a duty to a plaintiff." 2012 UT 11, ¶ 5. These factors include:

> (1) whether the defendant's allegedly tortious conduct consists of an affirmative act or merely an omission, (2) the legal relationship of the parties, (3) the foreseeability or likelihood of injury, (4) public policy as to which party can best bear the loss occasioned by the injury, and (5) other general policy considerations.

*Id.* (quotation simplified).

¶14 Applying these factors, the district court recognized that (1) the allegedly tortious conduct at issue consisted of an omission by Wal-Mart and (2) Davis was a "customer and invitee." But the court then held that Wal-Mart owed no duty to Davis. In the court's view, (3) the actions that gave rise to Davis's alleged

---

been potentially liable under a respondeat superior theory. But such a theory was not pursued here.

injuries were "unlikely" and "not foreseeable," and (4 & 5) "[p]ublic policy [was] not furthered by requiring business owners to bear the loss of unforeseeable, unlikely injuries occasioned by circumstances such as those present in this case."

¶15    But the district court need not have engaged in a *Jeffs* analysis at all. As noted, both the supreme court and this court have already held that a business does owe a duty of reasonable care to its invitees, and this is the very duty that Davis invoked in her suit. Given this, the existence of the duty in question has already been established.

¶16    In any event, even if there was some basis for the district court to consider the matter anew under a *Jeffs* analysis, the court's analysis was still flawed in a few key respects.

¶17    First, the district court's conclusion was largely driven by its assessment of the facts of this case. In its foreseeability analysis, for example, the court focused on whether it would be foreseeable that Davis "would move within inches of [Wal-Mart's] employee, stoop below the employee's field of vision, and do so without alerting the employee to her presence or waiting for the employee to finish returning merchandise to the top shelf." Then, in its analysis of the policy factors, the court focused on whether businesses should "bear the loss of unforeseeable, unlikely injuries occasioned by circumstances such as those present *in this case*." (Emphasis added.)

¶18    But under *Jeffs*, such case-specific analyses are unwarranted at the duty stage of the negligence inquiry. *See* 2012 UT 11, ¶ 25. *Jeffs* explained that "[d]uty must be determined as a matter of law and on a categorical basis for a given class of tort claims," and it further instructed that duty "should be articulated in relatively clear, categorical, bright-line rules of law applicable to a *general* class of cases." *Id.* ¶ 23 (emphasis added, quotation otherwise simplified). Indeed, with respect to the foreseeability

inquiry, *Jeffs* explained that in a "duty analysis, foreseeability does not question the specifics of the alleged tortious conduct such as the specific mechanism of the harm," but "instead relates to the general relationship between the alleged tortfeasor and the victim and the general foreseeability of harm." *Id.* ¶ 25 (quotation simplified).

¶19    By contrast, *Jeffs* instructed that it's the next steps of the negligence analysis—"breach and proximate cause"—that involve "questions for the fact finder" that can be "determined on a case-specific basis." *Id.* Thus, by focusing on the particular facts of this case, the court's duty analysis was misdirected.

¶20    Second, "[n]ot every factor" in the *Jeffs* analysis "is created equal." *Id.* ¶ 5. "[S]ome factors are featured heavily in certain types of cases, while other factors play a less important, or different, role." *Id.* Of note, the second *Jeffs* factor looks to the "legal relationship of the parties." *Id.* And as noted, the "legal relationship" at issue here is that of a business and its invitee. This matters because, again, this relationship has long been recognized as the source of the very duty at issue in this case.[3]

¶21    Indeed, the nature of this relationship also undermines the district court's conclusions regarding the foreseeability and policy factors. *Jeffs* held that, at the duty stage, foreseeability "relates to

---

3. In an apparent attempt to avoid the implications of this, Wal-Mart repeatedly describes the accident in question as a collision between "two pedestrians." But Davis didn't collide with a random passerby on the street. Rather, she collided with a Wal-Mart employee who was stocking shelves in a Wal-Mart while Davis was shopping inside that Wal-Mart. This is why Davis is alleging that Wal-Mart should be held liable for not taking additional steps to protect her while she was shopping. Thus, with respect to the relationship component of the duty analysis, this case fits comfortably within the rubric of a business and its invitee.

the general relationship between the alleged tortfeasor and the victim and the general foreseeability of harm." *Id.* ¶ 25 (quotation simplified). So too with the policy implications (at least as far as they relate to duty). After all, duty is "the product of policy judgments applied to relationships." *Yazd v. Woodside Homes Corp.*, 2006 UT 47, ¶ 17, 143 P.3d 283. And on that front, courts have already accounted for the relevant policy—namely, courts have imposed this duty based on "the age-old principle that, because the land possessor effectively throws open his property to the public for business, an invitee is entitled to visit and assume that the premises have been made safe for his visit." *Oswald v. Costco Wholesale Corp.*, 473 P.3d 809, 821 (Idaho 2020); *cf.* Restatement (Second) of Torts § 343A cmt. g ("[T]he fact that premises have been held open to the visitor, and that he has been invited to use them, . . . offer[s] some assurance to the invitee that the place has been prepared for his reception, and that reasonable care has been used to make it safe."). By holding otherwise, the district court erred.

¶22    Finally, Wal-Mart claims that even with the above authority, summary judgment was still appropriate under *Schnuphase v. Storehouse Markets*, 918 P.2d 476 (Utah 1996). *Schnuphase* was a slip-and-fall case. At oral argument, Wal-Mart elaborated on its view that, under the principles set forth in *Schnuphase* and other similar cases, it owed no duty to Davis.

¶23    We acknowledge that in some such cases, Utah courts have affirmed grants of summary judgment to defendants in the face of negligence suits. *See, e.g., id.* at 477–80; *Long v. Smith Food King Store*, 531 P.2d 360, 361 (Utah 1973); *Price v. Smith's Food & Drug Centers, Inc.*, 2011 UT App 66, ¶¶ 8–30, 252 P.3d 365. But even so, these cases don't compel a different result here.

¶24    In *Price*, we explained that "premises liability cases" such as those involving the slip-and-fall scenario "generally fall into two classes: those involving temporary conditions and those

involving permanent conditions." 2011 UT App 66, ¶ 9. Notably, the "second class of cases involves some unsafe condition . . . which was created or chosen by the defendant (or his agents), or for which he is responsible," and "it also includes cases where the storeowner's method of operation creates a situation where the reasonably foreseeable acts of third parties will create a dangerous condition." *Id.* (quotation simplified).

¶25    Many of the cases from this line of authority pre-dated *Jeffs.* But as discussed, the supreme court in *Jeffs* analyzed in depth how courts should approach the duty element in a negligence suit and, more particularly, how courts should consider the duty question at the summary judgment stage. *Jeffs* made it clear that a court should not engage in a fact-intensive analysis regarding the question of duty and that fact-intensive analyses are instead generally conducted at the breach or proximate cause stages. *See* 2012 UT 11, ¶ 25.

¶26    We don't read the slip-and-fall cases that are relied on by Wal-Mart as being inconsistent with the *Jeffs* framework. Indeed, in such cases, our courts consistently recognized that businesses *do* owe a duty of reasonable care to their invitees. *See Schnuphase*, 918 P.2d at 478 (explaining that a store owner "is charged with the duty to use reasonable care to maintain the floor of his establishment in a reasonably safe condition for his patrons" (quotation simplified)); *Long*, 531 P.2d at 362 (acknowledging "the admittedly correct rule requiring the defendant to exercise due care and prudence for the safety of its business invitees"); *Price*, 2011 UT App 66, ¶ 8 (holding that "a business owner is charged with the duty to use reasonable care" to maintain his property "in a reasonably safe condition for his patrons" (quotation simplified)). Thus, on the very point in dispute in this appeal, these cases are inconsistent with the position now advanced by Wal-Mart, which is that Wal-Mart owed no duty to Davis at all.

¶27     And while it's true that those cases often affirmed grants of summary judgment, they did so for reasons that are reconcilable with the treatment of duty from *Jeffs*. What those cases hold is that summary judgment is appropriate when reasonable minds cannot differ about whether the defendant's actions violated the duty of reasonable care. *Schnuphase*, for example, held that summary judgment was appropriate because "reasonable minds could not differ on the question of whether [the defendant] took reasonable precautions to protect its customers." 918 P.2d at 479 (quotation simplified). And in *Long*, the supreme court held that summary judgment was appropriate because the plaintiff had "not shown any basis upon which it reasonably could be found" that the defendant had done anything "inherently dangerous" or was otherwise "negligent." 531 P.2d at 362.

¶28     By discussing the particular facts of a case and then determining that, on those facts, reasonable minds could not disagree about whether the defendant acted negligently, those cases turned on questions of breach, not duty. So here, Wal-Mart could in theory rely on these cases to argue that, under these circumstances, this accident was so unforeseeable that no reasonable mind could conclude that Wal-Mart had breached the duty of reasonable care that it owed to Davis. And if it makes such an argument on remand, we express no opinion about how the argument should turn out. But in the decision at issue, the district court's analysis turned on duty, not breach. And as discussed, this duty analysis was incorrect under both *Jeffs*'s general framework and under the prior cases that specifically held that businesses do owe a duty of reasonable care to their invitees.

¶29     In short, Wal-Mart is a business and Davis was its invitee. Because of this, Wal-Mart had a duty to exercise reasonable care to ensure Davis's safety. The district court erred in determining otherwise.

## II. Open and Obvious Danger Rule

¶30　Wal-Mart next argues that, even if there was a generally applicable duty, the open and obvious danger rule absolved it of this duty under the circumstances of this case. In Wal-Mart's view, because Davis "knew that [the employee] was in the aisle and [was] engaged with arranging items on an upper shelf," and because Davis also "had more than one reasonable alternative to encountering any potential danger that [the employee's] movements might present," Wal-Mart owed no duty "to warn or otherwise protect [Davis] from the open and obvious danger presented by intruding into a working person's personal space." We disagree with Wal-Mart's proposed application of this rule.[4]

¶31　Under the open and obvious danger rule, "a possessor of land is not liable to [its] invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them." *Downham v. Arbuckle*, 2021 UT App 121, ¶ 12, 502 P.3d 312 (quotation simplified). "If the open and obvious danger rule applies, then the land possessor owes no duty to its invitees with respect to the open and obvious danger and therefore cannot be held liable for any injury caused thereby." *Id.* (quotation simplified). And the "open and obvious danger rule can still be appropriately applied even when the overarching duty owed is one of reasonable care." *Zazzetti*, 2022 UT App 42, ¶ 32.

---

4. Wal-Mart asked the district court to grant summary judgment under this rule as an alternative basis, but the court declined to do so. Wal-Mart now invokes this rule as an alternative basis for affirmance. *See PC Riverview, LLC v. Xiao-Yan Cao*, 2017 UT 52, ¶ 34, 424 P.3d 162 (holding that "when a party raises alternative grounds for affirmance, an appellate court may affirm the judgment appealed from on any legal ground or theory apparent on the record" (quotation simplified)).

¶32 There are "two key steps" to an open and obvious danger analysis—"the 'open and obvious danger' step and the 'anticipated harm' step." *Downham*, 2021 UT App 121, ¶ 14. Under the first step, courts must determine whether there was an "activity or condition on the land whose danger [was] known or obvious" to invitees. *Id.* ¶ 12 (quotation simplified); *accord Lyman v. Solomon*, 2011 UT App 204, ¶ 4, 258 P.3d 647. Under the second step, courts "inquire into whether factors existed to vest in the land possessor a duty to warn or otherwise protect the invitee from the obvious danger." *Downham*, 2021 UT App 121, ¶ 16 (quotation simplified). The rule's stringency accordingly ebbs and flows in this second step "depending upon the nature of the invitee and the nature of the possessor of land." *Hale*, 2005 UT 24, ¶ 31.

¶33 "Most cases involving claims of negligence are not susceptible to summary disposition." *Lyman*, 2011 UT App 204, ¶ 3 (quotation simplified); *see also Dwiggins*, 811 P.2d at 183 ("[S]ummary judgment is appropriate in negligence cases only in the clearest instances."). This is so because negligence cases commonly turn on factual questions. *See Downham*, 2021 UT App 121, ¶ 22. And this reluctance extends to cases involving the open and obvious danger rule. *See id.* ¶¶ 22, 26. Indeed, in *Downham*, we recently held that both steps of this rule involve factual questions; as a result, if "reasonable jurors could disagree" about either step, summary judgment would be "premature." *Id.* ¶¶ 26–27.

¶34 Given these principles, there are two reasons why Wal-Mart is not entitled to summary judgment based on the open and obvious danger rule.

¶35 First, much of Wal-Mart's argument about the potential application of this rule is focused on Davis's behavior. For example, Wal-Mart claims that the rule applies, in part, because of the "open and obvious danger presented by [Davis] intruding

into a working person's personal space." Wal-Mart also claims that the rule applies because Davis "decided to move behind [the employee]" and "then crouch or otherwise lower her body only twelve to eighteen inches away."

¶36    This focus is misplaced. As explained in the Restatement, the open and obvious danger rule holds that a "possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A(1). By focusing on dangers that exist "on the land," *id.*, this rule is concerned with a landowner's obligations to protect invitees from dangers that are associated with the landowner's property. And while this rule covers open and obvious dangers caused by an "activity" "on the land," the Restatement clarifies that this aspect of the rule implicates the "*possessor's* activities" that "may involve a risk which is known or obvious to those who enter his land." *Id.* § 343A cmt. c (emphasis added). Thus, "an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers *he will encounter* if he comes," meaning, "the actual conditions" and the "activities carried [out] on" that land. *Id.* § 343A cmt. e (emphasis added). And an invitee's "knowledge" of a land possessor's failure "to take particular precautions for the safety of such visitors" is "material only in determining whether the visitor is to be charged with contributory negligence, or assumption of risk" (and, we'd add, comparative fault) "in coming in contact with the dangerous condition." *Id.* § 343A cmt. d.

¶37    Here, the initial portion of Wal-Mart's argument is not focused on any condition or activity "on the land" that an invitee might encounter and from which Wal-Mart should potentially protect its invitees. Rather, Wal-Mart is focused on what the invitee herself subsequently did. There are many ways that Wal-Mart could potentially rely on that behavior in this suit—this

behavior might support an argument about a lack of proximate cause, for example, or perhaps an assertion of comparative negligence. But the open and obvious danger rule is concerned with dangers that were caused by activities or conditions on Wal-Mart's land. Wal-Mart points us to no authority (and we're aware of none) holding that the open and obvious danger component of the open and obvious danger rule can be satisfied by the subsequent conduct of the allegedly injured invitee herself. To the extent that Wal-Mart's argument turns on Davis's behavior, the rule is inapplicable.

¶38 Second, this leaves the question of whether the rule can apply here based on a condition on the land or Wal-Mart's own activity on it. And again, Davis's suit arguably implicated such an activity: namely, Davis claims that Wal-Mart was negligent for allowing its employee to stock shelves around customers without taking steps to adequately protect those customers. But to the extent that Wal-Mart now argues that this was the "activity on the land" that could trigger application of the open and obvious danger rule, thereby entitling it to summary judgment, the argument must fail because reasonable minds could differ about whether this was actually so.

¶39 Again, the first step requires proof that the condition or activity on the land involved a "danger" that was "known or obvious." *Downham*, 2021 UT App 121, ¶¶ 12, 14. And because this presents a factual question, summary judgment is warranted only if no reasonable juror could conclude otherwise. *See id.* ¶ 27. But in the open and obvious danger portion of its brief, Wal-Mart argued to us that "[n]o danger arose from [its employee's] potential movement." And in the earlier portions of its brief in which it discussed duty, Wal-Mart likewise insisted that this collision was "both unlikely and unforeseeable." Reiterating this view at oral argument, Wal-Mart asserted that "this is not a situation where Wal-Mart . . . was engaged in a hazardous

activity" and that its employee "was not involved in any type of hazardous conduct."

¶40 Taking Wal-Mart at its word, this must mean that at least some reasonable jurors could conclude that there was not a "known and obvious danger" on Wal-Mart's property. *Lyman*, 2011 UT App 204, ¶ 4 (quotation simplified). And if such jurors did conclude this, there would be no basis for applying the open and obvious danger rule. Thus, in light of its own arguments, Wal-Mart cannot show that it was entitled to summary judgment based on this rule.

CONCLUSION

¶41 Davis was Wal-Mart's invitee, so Wal-Mart owed her a duty of reasonable care. And under the circumstances of this case, Wal-Mart is not entitled to summary judgment based on the open and obvious danger rule. We therefore reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

———————